## JAMES SMITH WOOLEN MACHINE COMPANY *v.* JOHN S. HOLDEN.

### May Term, 1901.

Present: TAFT, C. J., ROWELL, TYLER, MUNSON, WATSON and STAFFORD, JJ.

### Opinion filed November 29, 1901.

*Replevin—Legal effect of a verdict of not guilty—V. S. 1482*—In an action of replevin, a verdict of not guilty determines that there was no unlawful detention by the defendant of the goods replevied, but does not necessarily determine the question of their return. That depends upon the right of possession.

*Replevin—Case in which a verdict of not guilty left undetermined the right of return*—In an action of replevin, a verdict of not guilty having been directed for a defendant on the ground that before suit brought there was no demand for the property replevied, which was property that had come into the hands of the defendant as administrator of an estate, the question of the right of return remained to be determined.

*Replevin—Province of court to make proper order with respect to return—Requisite facts may be found by jury*—In an action of replevin it is for the court to make such order and render such judgment in respect to a return as the facts found require, and when a verdict of not guilty does not involve a finding of the requisite facts, they may well be found specially by the jury.

*Replevin—Verdict assuming to decide the ultimate question of return*—In an action of replevin a verdict that the goods replevied should not be returned is a breach of correct procedure, and, as rendered, goes for nothing; still it may be determinative of facts properly submitted to the jury. Here such a verdict negatived a claimed intention of the parties to a contract.

*Contracts—A contract of "sale or return," and a "contract to purchase if satisfied" defined and distinguished—A contract in question construed*—A contract of "sale or return," and a "contract to purchase if satisfied," are here defined, and are distinguished in respect to the time when title passes; and a contract in question, the elements and the surrounding circumstances of which are stated in the opinion, is construed to have been the latter.

*Construction of contracts—A contract to purchase if satisfied—The determinative rule stated—*In deciding that an agreement under consideration was a contract to purchase if satisfied the rule is here applied, " that when by the agreement the vendor is to do anything to the goods for the purpose of putting them into that state in which the purchaser is bound to accept them, or, as it is sometimes worded, into a deliverable state, the performance of those things shall, in the absence of circumstances indicating a contrary intention, be taken to be a condition precedent to the vesting of the property."

*Liens—Fact out of which a lien under a contract to purchase if satisfied does not arise—*The fact that under a contract to purchase if satisfied machinery has been put into the hands of a vendee to be set up and put in operation by the vendor to the satisfaction of the vendee, does not give the vendee a lien on the machinery for the purpose of enforcing the completion of the contract on the part of the vendor. In such case the remedy for non-performance is an action for damages.

*Liens—Facts not constituting one a bailee and so giving him no bailee's lien—*One who has moved, and paid the freight on, machinery sent him under a contract to purchase if satisfied, does not, in consequence thereof, have a bailee's lien, as he is not thereby constituted a bailee.

*Definition of bailment—Liens arising by operation of law—*A bailment is defined, and liens arising by operation of law are considered, in determining the non-existence of a claimed lien.

*Contracts—Construction for the court—Case of sale on credit under which title passed with delivery—*With regard to a contract relating to a machine known as a rag picker, the only question was whether it was a sale for cash or on credit, and as a written order, and the delivery of the machine in compliance therewith, constituted the contract, and no facts in relation thereto were in dispute, it was for the court to construe it. The order and what was done thereunder are set out in the opinion, and constituted a sale on credit under which title passed on delivery.

*Improper argument of counsel—Exceptions—Setting aside of verdict—*The action of the trial court, with reference to an improper statement of counsel in argument, may be such that no exception lies. Nevertheless, if mischief is done that the court does not think sufficiently cured, a new trial may be granted.

REPLEVIN for a garnet machine and feeder and a rag picker. Plea, the general issue. Trial by jury, Bennington County, December Term, 1899, *Start, J.,* presiding. The court directed a verdict of not guilty for the defendant on the ground stated in the opinion, and submitted to the jury the question whether or not the property replevied should be returned to the defendant. The jury returned a verdict that the property should not be returned, and judgment was rendered accordingly. The defendant excepted.

Among other things, the court instructed the jury as to the bearing which the intention of the parties to a contract with respect to the garnet machine and feeder had upon the question of whether title thereto had passed, and whether the defendant was entitled to the return of the same. As to the rag picker the court instructed the jury that the question of its return depended upon whether it had been sold upon credit or for cash.

The questions raised by the exceptions, and the ways in which they were raised, appear from the opinion.

*W. B. Sheldon* and *J. K. Batchelder* for the plaintiff.

*Barber & Darling* for the defendant.

ROWELL, J. This is replevin for a garnet machine and feeder and a ragpicker, sold by the plaintiff to William Campbell, of whose estate the defendant is administrator. As the plaintiff made no demand for the machines before suit brought, the court directed a verdict of not guilty, and submitted to the jury the question of a return of the property. The direction of a verdict of not guilty not being excepted to, it stands, and must have its full legal effect; and the defendant contends that its legal effect is, to entitle him to a judgment of return, and that therefore it was error to submit the question of return to the jury. But that verdict did not determine the rights of the parties in respect of the property, but only that the defendant

was not guilty of an unlawful detention of it, and left untouched the right of possession, the thing upon which the question of return depended.

The statute provides that upon abatement, dismissal, nonsuit, default, or trial of an action of replevin, the court shall make such order for the return or restoration of the property as is just, and may take such inquest of damages in the premises as the rights of the parties require, and render judgment thereon accordingly.    Under this statute, a verdict of not guilty does not entitle the defendant to a return of the property regardless of what it settles.    Notwithstanding such a verdict, the defendant can prevail in the action only when he is entitled to a return, and he is entitled to a return only when his right is superior to the plaintiff's right, and if the verdict does not determine that question, it must be settled otherwise.  This has long been the practice in this state.  *Sprague* v. *Clark,* 41 Vt. 6; *Hotchkiss* v. *Ashley,* 44 Vt. 195.

The plaintiff is a manufacturer of textile machinery, and agreed with the intestate to furnish him on credit one of its garnet machines and a feeder at such a price, to be placed by it in the intestate's mill at Bennington, and there put and left in good working and running order, to the satisfaction of the intestate, who was to pay the freight from Philadelphia, the plaintiff's place of business.    The machine was shipped to the intestate at Bennington on the 20th of March, 1899, where it arrived on the 27th of March, and the intestate at once paid the freight and took it to his mill, where it remained in the boxes as shipped until after his death the 8th of April, and until it was replevied in this action the 19th of April, five days after the defendant was appointed administrator.

The machine as shipped consisted of over two hundred separate and detached parts, and it was a work of skill and considerable labor to set it up and put it in running order.  The

plaintiff does not put these machines on the general market, but furnishes them only on special orders, although it keeps practically all of the parts in stock except the rolls, which it makes only on special orders. The parts are never assembled in the plaintiff's factory for the purpose of sale until an order for a machine is received, and then, only far enough to make sure they are all there for shipment.

The defendant further contends that he was entitled to a judgment of return, for that the title and right of possession were in the intestate, and consequently in him as administrator, and that therefore it was error to submit the question of return to the jury; and error to submit it to the jury any way, as it was a question for the court and not for the jury.

In support of the first proposition he claims that as to the garnet machine and the feeder, the transaction was a contract of "sale or return," and that therefore the title vested in the intestate, subject to be devested by the exercise of his or the defendant's option to return within a reasonable time if not satisfied; and that therefore the court should have directed a verdict for a return, as requested.

But tested by Lord Blackburn's rule, the transaction was not a contract of "sale or return," but a contract to purchase if satisfied, and so the title did not pass, unless such was the intention of the parties. The rule is this:

"When by the agreement the vendor is to do anything to the goods for the purpose of putting them into that state in which the purchaser is bound to accept them, or, as it is sometimes worded, into a deliverable state, the performance of those things shall, in the absence of circumstances indicating a contrary intention, be taken to be a condition precedent to the vesting of the property."

This rule is adopted by the Supreme Court of the United States in *The Elgee Cotton Cases,* 22 Wall. 180, 188, and gen-

erally in this country. This branch of the case at bar comes fully within that rule, and the question was whether there were circumstances indicating a contrary intention, which the jury negatived.

The defendant further contends that he had an option to accept or to reject the machines the same as the intestate had, and that he had the right to an opportunity to exercise that option, it never having been waived, and could retain possession till that opportunity was accorded him. That would be giving him a right of possession in the nature of a lien for the purpose of enforcing performance by the plaintiff; but the relation of the parties was not such as to create such a right, the defendant's remedy being an action for damages for non-performance.

The defendant further contends that at all events he had a lien on the machines as matter of law for the freight and the work of moving them. Liens arising by operation of law spring from the relation of the parties without stipulation express or implied. The right rests upon principles of natural justice and commercial necessity, and is favored in law. It originated in those cases in which there was an obligation arising out of the public employment to receive the goods, though it is not now confined to that class of persons, but extends to bailees for hire, and the like, who bestow labor and expense upon the goods. This claim was put below upon the ground of a bailment, which is as tenable as any that can be suggested; but that is entirely untenable, for here is no element of a bailment; a bailment is the delivery of goods for some purpose, upon a contract, express or implied, that after the purpose has been fulfilled they shall be redelivered to the bailor, or otherwise dealt with according to his directions, or kept till he reclaims

them.   3 Am. & Eng. Ency. Law, 2nd Ed. 733.   Here is nothing of that kind.

The defendant claims that it was for the court and not for the jury to say whether the property should be returned or not, that is, that it was for the court to find the facts on which that question depended; and this he gathers from the statute that the court shall make such order for a return as is just, and take such inquest of damages as the rights of the parties shall require, and render judgment thereon.   But we do not so construe the statute, and such has not been the practice.   It is for the court to make such order and render such judgment as the facts found require, but the facts may well be found by the jury.   It is not, of course, within the province of the jury to decide the ultimate question of return; but if it does, it is only a breach of correct procedure, and must go for nothing.

The plaintiff claims that the ragpicker was sold for cash, and the defendant, that it was sold on credit, the same as the other machines.   The only order for the ragpicker is contained in the intestate's letter to the plaintiff of February 16, 1899, which is this:—

"GENTLEMEN:—Kindly advise me what you are doing about the garnet machine now on order with you, and if the same is ready to ship.   I may need the use of this machine about the 20th of March or the first of April, and would like to have the same put in position by that time.   If it would be more convenient for you to ship the machine now, you may do so, provided you would date the bill about March 15th.   I expect to go away about the first of March, and will be gone about six weeks, and would take care of the bill on my return.

"You may send with it one of the ragpickers that you recommended with the machine."

On the 20th of March the plaintiff shipped the picker to the intestate with the other machine, accompanied with a bill

of lading consigning both to him. He paid the freight and took the machines to his mill, where they remained until replevied.

We think the fair construction of that letter is, that it asked for the same credit for the picker as for the other machine. The order was, to send it with the other machine. The intestate would take care of the bill on his return, that is, the bill for both machines, the picker as well as the other. And the plaintiff seems to have understood it so, for it billed them together and alike, not asking for pay for the picker at any other nor different time than for the other.

It was error, therefore, to submit to the jury whether the picker was sold on credit or not. The court should have ruled as matter of law that it was sold on credit.

Plaintiff's counsel said in his closing argument to the jury, that the commission on the intestate's estate had been returned and closed. On objection, the court at once told the jury that there was no evidence of that, and not to consider the statement. This was not ruling that the statement was proper, but improper, and so no ground for an exception exists. If the trial court does not, on objection, stop counsel when they transcend the bounds of legitimate argument, but lets them go on, it is treated as a ruling that what they are saying is proper, or as a refusal to rule, and an exception lies. This is the doctrine of *Magoon* v. *The Boston & Maine R. R. Co.* 67 Vt. 177. The great weight of authority holds that the mischief is cured when the offending counsel withdraws his statement or the court at once rules out the objectionable matter and instructs the jury not to consider it. 2 Ency. Pl. & Pr. 730, note 4; Note to *McDonald* v. *People,* 9 Am. St. Rep. 569.

But if, after all, the court should think that the mischief is not sufficiently cured to insure the verdict against its taint, it would be its duty to set it aside, and on such terms as are just.

*Judgment reversed as to the picker, and judgment for the defendant that it be returned. The rest of the judgment is affirmed. Let the defendant recover costs in this court.*